UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GILBERTO SILVA,

    Petitioner,

    v.

DANIEL PARAMO, Warden,

    Respondent.
_____/

No. C 09-5656 PJH

**ORDER CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

    Petitioner Gilberto Silva, a Cailfornia state prisoner, filed a pro se petition for writ of habeas corpus. The court issued an order to show cause, and respondent filed an answer. The court subsequently appointed counsel on Silva's motion, and petitioner filed a traverse, request to expand the record, and request for evidentiary hearing. The court determines that the matter is suitable for decision without oral argument. Having reviewed the parties' papers and the record, and having carefully considered the relevant legal authorities, the court CONDITIONALLY GRANTS the petition.

**I.  BACKGROUND**

    **A.  Procedural History**

    On June 3, 2005, Silva was charged with second-degree robbery, along with a gang enhancement, in a felony complaint filed in Santa Clara County Superior Court. Answer, Ex. 1 at 2 (Complaint). The complaint also alleged that Silva sustained two 1996 robbery convictions (No. 3952-D and 3953-D), under Texas Penal Code § 29.02, that qualified as strikes under California Penal Code §§ 667 and 1170.12. The complaint further alleged that one of these priors (No. 3953-D) also qualified as a "serious felony" under California Penal Code § 667(a).

On February 20, 2008, before the preliminary hearing, Silva pled to the offenses as charged in the complaint. Ex. 2 (Change of Plea) at 3, 7.  During the plea colloquy, the trial court told Silva that he faced a maximum sentence of 25 years to life, consecutive to 15 years. *Id.* at 7.  The court also noted that if it dismissed one of the strikes, his sentence would be between nine and 25 years. *Id.* After being advised of his rights and the consequences of his plea and admissions, Silva pled nolo contendere to the second-degree robbery charge. *Id.* at 9.  He also admitted the two separate strikes and the prior serious felony based on the Texas robbery convictions. *Id.* at 9-10.  Trial counsel stipulated that there was a factual basis for the plea and admissions. *Id.* at 10.

On April 24, 2008, Silva filed a motion pursuant to *People v. Superior Court (Romero)*, 13 Cal. 4th 497 (1996), seeking dismissal of both strikes in the interest of justice. The prosecution opposed the motion.  The probation report recommended a sentence of 25 years to life consecutive to 15 years, but indicated that if Silva were not statutorily ineligible for probation, "a lesser prison term would have been considered recognizing, he was not armed during the incident, his otherwise minimal recent criminal history, and his expressed willingness to have his tattoos removed and live a productive life."  Ex. 1 at 38-39.

On May 13, 2008, the sentencing court held the *Romero* hearing, at which the defense submitted a letter, and Silva's mother, his mother's friend, and a pastor testified on his behalf.  Ex. 2 at 15-18.  The prosecutor pointed out that Silva told the probation officer that he did not commit this crime, and also said that he would not have pled guilty to the two prior felony convictions if he had not been young with an inexperienced attorney.  Ex. 1 at 34-35, 37.  The court observed that Silva's statements to the probation department were "unfortunate," but stated, "as I think I indicated during our discussions, I'm still inclined to go ahead and strike one of the two strikes based on the age of the strike, your age at the time you committed it and your early acknowledgment at least by way of a plea."  Ex. 2 at 22-23. The court imposed a sentence of 19 years, comprising the low term of two years for the conviction offense of second degree robbery, doubled to four years based on one strike prior conviction, plus 10 years for the gang enhancement and five years for a serious felony

2

prior conviction. *Id.* at 23-24.  The court stated, "Probation, by the way, so you know, Mr. Silva, recommended 25 to life consecutive to 15, which means you would have served 80 percent of 15 years and then started your 25-year sentence.  So, you know, I am giving you a considerable assist here by giving you a fixed term even though it's a long term, and it will be up to you upon your release to decide whether you're going to continue to do life on the installment plan or whether you're going to turn things around."  Ex. 2 at 24.

Silva filed an appeal on August 27, 2008, seeking independent review of the entire record pursuant to *People v. Wende*, 25 Cal. 3d 436 (1979).  Ex. 3.  The California Court of Appeal, finding no arguable issue on appeal, affirmed the judgment of conviction on December 16, 2008.  Ex. 4.

Silva also filed a petition for writ of habeas corpus in the court of appeal on September 25, 2008, seeking relief on the ground of ineffective assistance of trial counsel by failing to contest, and permitting and/or counseling Silva to admit, the prior strike allegations.  Ex. 5.  The court of appeal issued a summary denial of the habeas petition on May 27, 2009.  Ex. 8.

Silva filed a petition for review of the denial of his habeas petition.  The California Supreme Court denied review on July 29, 2009.  Ex. 10.

Silva filed his federal habeas petition in this action on April 5, 2010.  The original petition referred to, but did not include, an attachment and the petition was dismissed with leave to amend.  Silva then refiled the same petition, with the word "amended" handwritten in the caption, but again failed to provide the attachment.  The court again dismissed with leave to amend.  Silva then filed the appropriate attachment, and the court issued an order to show cause on April 19, 2011.  Respondent filed an answer on June 15, 2011.  Silva thereafter filed a motion to appoint counsel, which the court granted by order entered December 13, 2011.  After requesting, and being granted, three extensions of time, Silva filed the traverse, a request to expand the record, and a request for evidentiary hearing.

3

**B.     Conviction Offense**

The following factual summary of Silva's conviction offense is taken directly from the opinion of the court of appeal, as derived from the probation report.  Ex. 4.

At approximately 8:15 p.m. on May 31, 2005, Silva and another individual, William Smith, approached the 17-year-old male victim while he was walking home on East Taylor Street in San Jose.  Smith asked the victim if he was a Sureño; the victim denied it and told Silva and Smith that they might have mistaken him for a member of the Sureño gang because of the blue Los Angeles Lakers cap he was wearing.  The victim removed the cap and Smith attempted to grab it out of his hand.  A struggle ensued, and Silva ran up to the victim and pushed him to the ground, resulting in an abrasion to the left side of the victim's face.  The victim was then kicked by Silva or Smith.  The kicks caused the victim a great deal of pain and he was fearful for his life.  He was able to get up and run home, whereupon his brother called the police.

Shortly after they spoke with the victim, San Jose police officers on bicycle patrol observed five males (including Silva) in the front yard of a residence near the scene of the robbery.  Silva's clothing matched the description given by the victim; Silva was holding the victim's cap.  It was marked with Noreño graffiti.  The cap had written on it in black ink, "'X4', 'SACRAS', 'I love scrapes" and 'Texas.'"  Silva told the police that he had been standing in the front yard when he observed his two friends arguing with an unknown male.  Silva approached because he believed that his friends were in trouble.  As he did so, the unknown male took off his cap and one of Silva's friends took it; the unknown male then ran off without any physical confrontation.

The probation officer reported that "although he has numerous facial tattoos depicting gang affiliation, the defendant said that he has never been jumped in.  He said, 'I was a follower' and he got the gang related tattoos while intoxicated.  He said there are no such things as Norteño and Sureño gangs in Texas but once he came to California he began associating with Norteño gang members."

### C. Prior Convictions

The following factual summary of Silva's two prior convictions is taken from the prosecution's brief in opposition to Silva's *Romero* motion. Ex. 1 at 21-22.

#### 1. January 25, 1996 Robbery

**Strike Prior #1:** Taylor County, Texas 1996, docket 3935D [sic];[1] Texas Penal Code 29.02 (Robbery), 5 yrs. Texas State Prison.

Shortly after midnight on January 25, 1996 defendant Gilberto Silva entered the Circle K convenience store located at 3401 Ambler Avenue, in Abilene, Texas and took two 18-pack cases of Budweiser beer and walked out of the store without paying. The store clerk, James Earl Jones, pursued him outside of the store. The store clerk yelled, "Stop!" The defendant stopped, turned around, put the beer on the ground, bent over slightly and put his hands behind his back. Defendant then said to the clerk, "Come on man and I'll pop you." The clerk thought defendant had a gun and broke off the pursuit. Defendant Silva then ran away with the beer. The victim did not see a gun actually displayed by defendant Silva.

#### 2. January 31, 1996 Robbery

**Strike Prior #2:** Taylor County, Texas 1996, docket 3935D [sic];[2] Texas Penal Code 29.02 (Robbery), 5 yrs. Texas State Prison (concurrent).

On January 31, 1996 defendant Gilberto Silva entered the Wylie Shamrock convenience store located at 799 Arnold Boulevard, Abilene, Texas and selected two 12-packs of Budweiser beer and headed out the door without paying. The store clerk, Virginia Bush, followed him outside and confronted him, taking the two 12-packs back. Defendant Silva raised up his right hand with a closed fist.

---

[1] The correct docket number for the January 25, 1996 offense, as stated on the judgment entered by the Taylor County court, is No. 3953-D. Ex. 5 (state habeas petition, Ex. B).

[2] The correct docket number for the January 31, 1996 offense, as stated on the judgment, is No. 3952-D. Ex. 5 (state habeas petition, Ex. B).

Case 4:09-cv-05656-PJH   Document 20   Filed 02/27/13   Page 6 of 18

A gas customer, Bradley Williams, then came around the corner and told the defendant Silva, "No you're not!" The store clerk, Ms. Bush, then walked back into the store followed by the defendant. As defendant Silva followed the store clerk, Mr. Williams saw him lift up his shirt, exposing a handgun. The defendant put his hand on the gun but then lowered his shirt once he was back in the store. The defendant never pulled out the gun or pointed it at the clerk. Ms. Bush informed defendant Silva that she was going to call "911." Defendant Silva told her to, "Go ahead." Defendant Silva then picked up three packs of cigarettes and walked out of the store without paying. The defendant was subsequently apprehended and identified.

## II.   ISSUE PRESENTED

Silva raises a claim for habeas relief based on ineffective assistance of counsel for failing to investigate and challenge the prior strike allegations and for advising or allowing Silva to admit them.

## III.   STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407–09, (2000), while the second prong applies to decisions based on factual determinations, *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."

*Williams (Terry)*, 529 U.S. at 412–13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]valuating whether a rule application [i]s unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* "As a condition for obtaining habeas corpus [relief] from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller–El*, 537 U.S. at 340. Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

**IV.    DISCUSSION**

   **A.    Legal Standard**

Criminal defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (citations omitted). "During plea negotiations defendants are entitled to the effective assistance of

7

competent counsel." *Id.* (citation and internal quotation marks omitted). The two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). To establish the performance prong of *Strickland*, a habeas petitioner must show "'that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice under the second *Strickland* prong, a habeas petitioner must "'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Cooper*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Id.* When evaluating a petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the petitioner must show "'that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 1384-85 (quoting *Hill*, 474 U.S. at 59).

### B.    Claim Is Not Barred by Entry of Guilty Plea

As an initial matter, respondent contends that petitioner's claim is not cognizable because it involves a claim of error that arose prior to the entry of the guilty plea. Ans. at 6 (citing *Tollett v. Henderson*, 411 U.S. 258 (1973)). Respondent did not bring a motion to dismiss, but now seeks dismissal of the ineffective assistance claim on the ground that it is precluded by entry of the guilty plea. *Id.* at 7. Even if the court were to overlook respondent's procedural misstep and consider the merits of his request to dismiss, Silva's ineffective assistance claim is not precluded by entry of the plea. As the Supreme Court held in *Tollett*, in a passage quoted by respondent, a habeas petitioner "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759 (1970)]." *Tollett*, 411 U.S. at 267. In *Cooper*, 132 S. Ct. at 1384, the Supreme Court recently reaffirmed that a claim for ineffective assistance in advising the defendant on a

8

plea offer is cognizable in federal habeas review. In light of this clearly established Supreme Court authority, respondent's contention that Silva's claim was waived upon entering his guilty plea is simply incorrect.

### C. Ineffective Assistance of Counsel

Silva contends that his trial counsel was ineffective in failing to challenge allegations that Silva had suffered out-of-state prior convictions, and in counseling Silva to admit them, when the out-of-state priors did not meet California's standards for a "strike."

#### 1. Performance

In *Hill*, the Supreme Court held, "In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*, [411 U.S. 258 (1973)], and *McMann v. Richardson*, [397 U.S. 759 (1970)]." *Hill*, 474 U.S. at 58-59. As articulated in *Hill*, the *McMann* court held that where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting *McMann*, 397 U.S. at 771). *Tollett*, in turn, held that "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.'" *Hill*, 474 U.S. at 58 (quoting *Tollett*, 411 U.S. at 267).

Here, Silva has demonstrated that his trial counsel's performance fell below an objective standard of reasonableness by advising or allowing Silva to admit the allegations of prior strike convictions where the elements of robbery in Texas were not sufficient to meet the elements of robbery in California. Robbery under California law requires the element of taking, which is not required under Texas law. *People v. Rodriguez*, 122 Cal. App. 4th 121, 129-30 (2004). The court of appeal in *Rodriguez* distinguished the elements of the offense of robbery under Texas law from the requirements for robbery under California law to qualify as a strike:

9

> In California, robbery is a serious felony that qualifies as a prior strike and requires a five year sentencing enhancement. (§§ 1192.7, subd. (c)(19), 667, subd. (a)(1), (4).) That offense is defined as follows: "Robbery is the felonious *taking* of personal property *in the possession of another, from his person or immediate presence*, and against his will, accomplished by means of force or fear." (§ 211, italics added.) "Taking" is an element of the crime of robbery (*People v. Nguyen* (2000) 24 Cal.4th 756, 761; see also 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Property, § 90, p. 119), and consists of "two necessary elements, gaining possession of the victim's property and asporting or carrying away the loot." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165.) Asportation is thus an element of robbery in California.

122 Cal. App. 4th at 129-30.

In *Rodriguez*, the appellant challenged the sufficiency of the evidence to prove that his prior robbery conviction in Texas qualified as a serious felony under California law to sustain the prior strike sentencing enhancement. The *Rodriguez* court determined that under Texas Penal Code section 29.02, "asportation has not been an element of robbery[,] nor has there been any requirement for robbery that property be taken from the person or immediate presence of one in possession of that property." *Id.* at 130 (citations omitted). California law, however, requires both elements of asportation and the taking of property from the person or his or her immediate presence, to establish a taking for the crime of robbery. *Id.* at 131. The *Rodriguez* court held that because the record concerning the appellant's Texas robbery conviction did not disclose the facts of that offense, "there is no evidence that appellant's robbery involved either asportation or taking property from the person or his or her immediate presence, [and] the trial court's finding that appellant's Texas robbery conviction satisfied all of the elements of robbery under California law is not supported by substantial evidence." *Id.*

Silva was convicted under the same Texas statute that was analyzed in *Rodriguez,* which was decided nearly four years before Silva entered his plea. To determine the substance of the prior convictions under California law, "the court may look to the entire record of the [prior] conviction . . . ; but when the record does not disclose any of the facts of the offense actually committed, the court will presume that the prior conviction was for the least offense punishable under the foreign law." *People v. Guerrero*, 44 Cal. 3d 343,

352 (1988). The *Guerrero* court held that "in determining the truth of a prior-conviction allegation, the trier of fact may look to the entire record of the conviction," and is not limited to matters established by the judgment of conviction. 44 Cal. 3d at 355. Here, as in *Rodriguez*, the record of Silva's prior robbery convictions in Texas does not include facts sufficient to support the elements of asporting, or carrying away, and taking of property from the person or his/her immediate presence, as required for robbery under California law.

The record contains an abstract of Silva's criminal history in Texas, the indictments on the robbery charges, the written plea admonishments in both cases, stipulations of evidence, and the judgments entered on the guilty pleas entered in both cases. Ex. 1 at 53-54; Ex. 5. The extent of the evidence of the prior offenses is limited to Silva's admission of facts stated in the Stipulation of Evidence filed in each case:

> [**No. 3952D**:] I judicially confess to the following facts and agree and stipulate that these facts are true and correct and constitute the evidence in this case:
>
> That on or about the 31st day of January, 1996, in Taylor County, Texas, I GILBERTO SILVA while in the course of committing theft of property and with intent to obtain and maintain control of said property, did then and there intentionally and knowingly threaten and place VIRGINIA BUSH in fear of imminent bodily injury and death. . . .

and

> [**No. 3953D**:] I judicially confess to the following facts and agree and stipulate that these facts are true and correct and constitute the evidence in this case:
>
> That on or about the 25th day of January, 1996, in Taylor County, Texas, I GILBERTO SILVA while in the course of committing theft of property and with intent to obtain and maintain control of said property, did then and there intentionally and knowingly threaten and place JAMES JONES in fear of imminent bodily injury and death. . . .

Ex. 5 (state habeas petition, ex. C). These records of the Texas convictions do not disclose the facts or circumstances of the robberies, other than the date of the offense and the name of the victim. Under applicable California law, the court is required to presume that the prior convictions were "for the least offense punishable under Texas law." *Rodriguez*, 122 Cal. App. 4th at 131 (citing *Guerrero*, 44 Cal. 3d at 354-55).

11

The record also includes summaries of the prior strike convictions provided by the prosecution in opposition to Silva's motion to dismiss the prior strikes, Ex. 1 at 21-22, and by the probation officer in her report to the sentencing court, *id.* at 36. Although these summaries of the prior Texas convictions supply factual details that could show that each prior offense involved taking possession of property from a person or in his/her immediate presence and carrying away the property, the summaries of the prior offenses are attorney argument or inadmissible hearsay, and the source of the facts upon which the summaries are based is not in the record.[3] The record therefore lacks sufficient evidence to support a finding that either of the Texas robbery convictions qualified as a strike under California law. *See Rodriguez*, 122 Cal. App. 4th at 131 (finding that judgment and sentence issued by Texas court were insufficient to satisfy all the elements of robbery under California law).

Addressing the performance prong under *Strickland*, respondent argues that Silva's trial counsel made a strategic decision to seek a favorable sentence by having Silva admit the charges early on and focus on the *Romero* motion to dismiss the strikes. Ans. at 7. Respondent contends that this strategy was successful, as demonstrated by the trial court's decision to dismiss one of the strikes based in part on Silva's "early acknowledgement" of guilt "at least by way of a plea." Ex. 2 at 23. Although plea bargains generally involve "careful strategic choices in balancing opportunities and risks," *Premo v. Moore*, 131 S. Ct. 733, 741 (2011), the record here indicates that trial counsel failed to advise Silva that his prior out-of-state convictions would not qualify as strikes under California law, as articulated in *Rodriguez* and *Guerrero*. *See Padilla v. Kentucky*, 559 U.S. 356 (2010) (recognizing the "critical obligation of counsel to advise the client of 'the advantages and disadvantages of a plea agreement'") (quoting *Libretti v. United States*,

---

[3] In Silva's state habeas petition, filed in the court of appeal, habeas counsel noted that the probation officer's strike prior summary was obtained from Abilene Police Department reports, and that those police reports were not part of the record on appeal and were not provided to trial counsel during discovery. Ex. 5 (state habeas petition at 18). The state conceded that the appellate record did not include the documentary evidence concerning the Texas priors that the prosecutor possessed. Ex. 6 (informal opposition to habeas petition at 5). Because the police reports are not in the record, the court does not reach the question whether those reports would be inadmissible hearsay.

12

516 U.S. 29, 50–51 (1995)).  Upon review of the transcripts of the trial court proceedings that are in the record, there is no indication, during either the change of plea or the sentencing, that Silva's attorney inquired into the requisite elements of robbery under California law to qualify the prior Texas convictions as strikes.  *See Riggs v. Fairman*, 178 F. Supp. 2d 1141, 1148 (C.D. Cal. 2001) ("In the present case, however, there existed no strategic or tactical reason to have forgone virtually all significant inquiry into Petitioner's criminal history."), *aff'd*, 399 F.3d 1179 (9th Cir.), *reh'g en banc granted*, 430 F.3d 1222 (9th Cir. 2005), *appeal dismissed*, 2006 WL 6903784 (9th Cir. 2006).

Applying the *Strickland* standard, no competent attorney would have advised or allowed Silva to admit the strike allegations where the prior convictions did not qualify as strikes under state law.  Because the state court failed "to consider, or even acknowledge," the highly probative evidence in the record to support a finding of deficient performance, the state court decision was "based on an unreasonable determination of the facts." *Taylor v. Maddox*, 366 F.3d 992, 1005 (9th Cir. 2004).

### 2. Prejudice

With respect to the required showing of prejudice, a habeas petitioner must demonstrate "'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Premo*, 131 S. Ct. at 743 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).  Silva argues that trial counsel's failure to research and advise him about the adequacy of the prior robbery convictions led him to admit the prior strike allegations, which subjected him to a greatly increased sentence. Had trial counsel sought dismissal of the strike allegations based on the insufficiency of the evidence in the prior conviction records, and been successful, Silva contends that he would not have been subject to the maximum sentence of 25 years to life under the habitual criminal sentencing provisions, Cal. Penal Code §§ 667 and 1170.12.  Reply at 23-24 and n.21.  Silva further contends that if he had not admitted the prior strikes, his maximum possible sentence would have been 12 years: two years for the current offense plus 10 years for the gang enhancement.  Reply at 23 (citing Cal. Penal Code § 18(a) (setting

13

sentence for felony, unless otherwise prescribed, as "16 months, or two or three years in the state prison") and § 186.22(b)(1)(C) (setting 10-year gang enhancement for violent felony). Because he admitted the strike allegations, however, Silva's maximum sentence was increased to life with the possibility of parole after 25 years, consecutive to 15 years, because of the 10-year gang enhancement and five-year serious prior felony enhancement. Reply at 24 (citing Ex. 1 at 38).

Even after dismissing one of the admitted prior strikes, the trial court sentenced Silva to 19 years imprisonment, resulting in an additional seven years of prison time above the sentence for the conviction offense and gang enhancement alone: two extra years for the doubling of the robbery sentence under former Penal Code section 667(e)(1) ("If a defendant has one prior felony conviction that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction"), plus five extra years for the serious prior felony enhancement under Penal Code section 667(a) ("in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately"). Silva has demonstrated that if he had gone to trial and been convicted of second-degree robbery, his sentence would have likely been 12 years, but no more than a maximum prison term of 13 years if he had been sentenced to the highest three-year term, plus 10 years for gang enhancement. This six- or seven-year increase in Silva's sentence demonstrates actual prejudice resulting from trial counsel's errors.

Respondent contends that Silva has not demonstrated that he was prejudiced by counsel's deficient performance because he was sentenced to a fixed term rather than an indeterminate sentence. Ans. at 8. However, the reason why Silva faced an indeterminate sentence, rather than a fixed term, was that his attorney improperly allowed or counseled Silva to admit the prior strike allegations.

Respondent also argues that Silva fails to show that he would have gone to trial but for counsel's deficient performance, citing trial counsel's statement that Silva had "been

14

very afraid throughout all the proceedings," Ex. 2 at 19, and the probation officer's report that Silva did not want to go to trial because of the visible gang tattoos on his face and neck, Ex. 1 at 34. Silva has shown, however, that but for his counsel's deficient performance, there is a "reasonable probability" that he would not have accepted a plea offer that included an admission of the prior strike allegations, exposing him to an indeterminate sentence of 25 years to life, plus 15 years, rather than a fixed term if he had gone to trial on the robbery charge. *See Cooper*, 132 S. Ct. at 1391. Silva has also demonstrated that he could have admitted the charged offense to avoid trial, and still challenge the sufficiency of the evidence of his prior convictions to support the strike allegations. Reply at 26 (citing Cal. Penal Code § 1025(b) ("the question of whether or not the defendant has suffered the prior conviction shall be tried by the jury that tries the issue upon the plea of not guilty, or in the case of a plea of guilty or nolo contendere, by a jury impaneled for that purpose, or by the court if a jury is waived")).

Silva has demonstrated that his trial counsel provided ineffective assistance during plea negotiation, plea acceptance and at sentencing. The state court's denial of his habeas claim involved an unreasonable application of clearly established Supreme Court precedent under *Strickland* and its progeny. Silva's claim for habeas relief is therefore GRANTED.

Because the court grants the petition, Silva's request for expansion of the record or for an evidentiary hearing is denied.

### D.   Remedy for Ineffective Assistance

Silva has not requested a particular remedy for the violation of his right to effective assistance of counsel. Remedies for Sixth Amendment deprivations generally "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364 (1981). In fashioning a habeas remedy for ineffective assistance of counsel, the petitioner must be put back in the position he would have been in had he received effective assistance of counsel. *Nunes v. Mueller*, 350 F.3d 1045, 1056 (9th Cir. 2003).

15

In *Johnson v. Uribe*, 682 F.3d 1238, 1245-46 (9th Cir.), *opinion amended and superseded on denial of reh'g*, 700 F.3d 413 (9th Cir. 2012), *pet. for certiorari filed* Feb. 4, 2013, the court of appeals affirmed the district court's grant of the habeas petition for ineffective assistance during plea negotiations, but vacated the district court's remedy of granting the petition subject to lawful resentencing. There, Johnson was charged with three theft-related felonies and enhancements for prior criminal history, including prior prison terms which, as later conceded, did not fall within the meaning of California Penal Code § 667.5(b) and should not have served as additional enhancements of Johnson's sentence. The district court held, after an evidentiary hearing, that Johnson had received ineffective assistance of counsel due to his attorney's failure to advise him that he was pleading guilty to an unlawful sentence that was greater than the sentence authorized by California law and greater than the sentence that he could have received if he went to trial and was found guilty of all charges and the alleged enhancements were proven. *Johnson*, 682 F.3d at 1241. The district court ordered that Johnson be released within 120 days unless the state court resentenced him to a lawful sentence.

On appeal, Johnson argued that the district court's remedy of granting the petition subject to the state court resentencing Johnson under the same plea agreement, while simply adjusting the term to reflect the removal of the three invalid enhancements, was insufficient to cure the ineffective assistance of counsel received throughout the pre-plea stage of the proceedings. *Id.* at 1243-44. The court of appeals agreed with Johnson, and held that "[t]he Sixth Amendment violation here caused the entire plea negotiation process between Johnson and the prosecution to be conducted based on an erroneous sentencing calculation, weighted against Johnson. As a result, he is entitled to be returned to that pre-plea stage and proceed under the correctly-calculated sentencing range." *Id.* at 1245. Citing authority for the principle that "'in some situations it may be that resentencing alone will not be full redress for the constitutional injury,'" the Ninth Circuit panel held that it was "impossible for us to know how the earlier stages of the plea negotiation process might have progressed had [the trial attorney] rendered effective counsel from the outset by

16

correctly evaluating the charges against Johnson." *Johnson*, 682 F.3d at 1245-46 (quoting *Cooper*, 132 S.Ct. at 1389). The court in *Johnson* reasoned, "Had Johnson's assistance of counsel been constitutionally adequate, his attorney would have duly objected to the erroneous calculation of three additional enhancements at the outset, and the government would have been negotiating from a 'weaker,' and certainly different, prospective sentencing position. A correct calculation, therefore, could have resulted in more favorable plea offers for Johnson . . . ." *Id.* at 1245. The Ninth Circuit panel ordered that the district court grant a conditional writ of habeas corpus, subject to the state court vacating Johnson's conviction and granting him a new trial. *Id.* at 1246.

In fashioning a remedy, the court notes that Silva concedes that a sentence of 12 years imprisonment, comprising two years for the conviction offense and 10 years for the gang enhancement, would be lawful. Reply at 23. However, conditional issuance of a writ of habeas corpus, subject to the condition that the state court resentence Silva to a lawful sentence, is not a sufficient remedy under *Johnson*.[4] Pursuant to the holding of *Johnson*, the court therefore grants a conditional writ of habeas corpus and orders respondent to release Silva from custody unless, within 120 days of the date of entry of judgment on this order on the clerk's docket, the state commences proceedings to retry Silva.

## V.   CONCLUSION

For the reasons set forth above, the court CONDITIONALLY GRANTS the petition for a writ of habeas corpus. Accordingly, Silva's judgment and conviction are VACATED, and respondent shall release Silva from custody unless the state commences proceedings

---

[4] The appropriate remedy for violation of a defendant's constitutional right to effective assistance of counsel during plea negotiations and sentencing is not a fully settled issue. In *Johnson*, the petition for rehearing en banc was denied over forceful dissenting opinions authored by Chief Judge Kozinski and Judge Bea. *Johnson* is currently before the United States Supreme Court on a petition for a writ of certiorari filed by the Attorney General on behalf of the warden. *Uribe v. Johnson*, No. 12-968 (U.S. Feb. 4, 2013) (petition for writ of certiorari). Notably, the Supreme Court recently granted certiorari to review a habeas decision by the Sixth Circuit which presents the question of an appropriate remedy under *Lafler v. Cooper* where a defendant shows a reasonable probability that she would have accepted a plea offer but for ineffective assistance of counsel. *See Burt v. Titlow*, No. 12-414 (U.S., Feb. 25, 2013) (order granting petition for a writ of certiorari).

to retry him within 120 days of the date of entry of judgment on this order.  This order fully adjudicates the petition and terminates all pending motions.  The clerk shall close the file.

The clerk is directed to send an informational copy of this order to the district attorney of Santa Clara County, in addition to the usual service on counsel of record via e-filing.

**IT IS SO ORDERED.**

Dated:  February 27, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge